IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DION W. PARKER,                          §
                                         §
                 Plaintiff,              §
                                         §
VS.                                      §   CIVIL ACTION H-12-2484
                                         §
                                         §
MISSOURI CITY, TEXAS; MISSOURI           §
CITY, TEXAS POLICE DEPARTMENT;           §
MISSOURI CITY, TEXAS POLICE              §
CHIEF JOEL FITZGERALD, SR., in           §
His Individual and Official              §
Capacities; MISSOURI CITY, TEXAS§
POLICE OFFICER BADGE NO. 1003T,          §
in his Official and Individual           §
Capacities; MISSOURI CITY, TEXAS§
UNKNOWN POLICE OFFICER, in his           §
Official and Individual                  §
Capacities; and TASER                    §
INTERNATIONAL, INC.,                     §
                                         §
                 Defendants.             §

## OPINION AND ORDER OF PARTIAL DISMISSAL

Pending before the Court in the above referenced cause,

alleging assault and battery, excessive force by tasing, and

unlawful detention (false arrest or illegal seizure) in violation

of 42 U.S.C. §§ 1983 and 1988 and the First, Fourth and Fourteenth

Amendments of the Unites States Constitution, and under Texas law,

the Texas Tort Claims Act ("TTCA"), Texas Civil Practice & Remedies

Code §§ 101.001, 101.021, and 101.101, are the following motions:

(1) Defendants Missouri City, Texas and Missouri City, Texas Police

Department's motion to dismiss pursuant to Section 101.001, *et*

*seq.*, of the Texas Tort Claims Act and pursuant to Rule

12(b)(6)(instrument #9); and (2) Defendants Joel Fitzgerald, Sr. ("Fitzgerald"), Missouri City Police Officer Badge No. 1003T ("Officer Badge No. 1003T"), and Unknown Missouri City Police Officer's ("Unknown Officer's") amended motion to dismiss for insufficient service of process pursuant to Federal Rules of Civil Procedure 4(e), 4(m). and 12(b)(5) (#14).[1]

## I. Standard of Review and Rules of Procedure

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007);

---

[1] Defendant Taser International, Inc. and thus the products liability claim against it, have been dismissed from this suit (#28) and thus its motion to dismiss for insufficient service of process (#18) is moot. Thus the Court does not discuss it in this Opinion and Order.

*Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough

facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal

-4-

is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]"). The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

"The core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. U.S.*, 517 U.S. 654, 672 (1996). "Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of

service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

A *pro se* plaintiff is not excused from the requirement to effect service of process. *Sys. Signs Supplies v. United States Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

Pursuant to Federal Rule of Civil Procedure 4(e), service on individuals in the United States, such as the individual police officer Defendants here, may be accomplished by (1) serving a defendant in accordance with the laws of the state in which either he is located or in the state where the district court is located, in the instant case Texas[2]; (2) personally delivering a copy of the summons and complaint to the individual; (3) leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides

---

[2] Texas Rule of Civil Procedure 106(a), regarding service of citation, provides,

> Unless the citation or an order of the court otherwise directs, the citation shall be served by an person authorized by Rule 103 by
>
> > (1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or
> >
> > (2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

there; or (4) by delivering a copy of the summons or complaint to an agent authorized by appointment or by law to receive service of process.

Federal Rule of Civil Procedure 12(b)(5) permits a court to dismiss a claim for "insufficient service of process."[3] Where the defendant challenges the validity of the service of process, the court "must look outside the complaint to determine what steps, if any, the plaintiff took to effect service." *Dunlap v. City of Fort Worth*, No. 4:13-CV-802-0, 2014 WL 1677680, at *2 (N.D. Tex. Apr. 28, 2014). If a defendant has not been served with process in compliance with Rule 4, the court lacks personal jurisdiction over that defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002).

Rule 4(m) provides that if service on a defendant has not been made within 120 days after the plaintiff filed the complaint, "the court, upon motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified

---

[3] Usually "'[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," while a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint.'" *Gartin v. PAR Pharmaceutical Companies, Inc.*, 289 Fed. Appx. 688, 692 n.3 (5th Cir. July 24, 2008), *citing* 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice & Proc.: Civil 3d* § 1351.

time." If it finds that good cause exists for the delay, the court must extend time for service; if it finds that good cause does not exist, it has the discretion to decide whether to dismiss the case without prejudice (thereby allowing the plaintiff to effect proper service if the statute of limitations has not run) or to extend time for service.[4] *Gartin*, 289 Fed. Appx. at 692, *citing Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013). "Good cause" under the Rule means "'at least as much as would be required to show excusable neglect, as to which simple advertence or mistake of counsel or ignorance of the rules usually does not suffice.'" *Id., citing Lambert v. U.S.*, 44 F.3d 296, 299 (5th Cir. 1995). The Fifth Circuit has opined that dismissal is usually not appropriate if there is a reasonably conceivable means of acquiring jurisdiction over the defendant. *Stanga v. McCormick Shipping Corp.*, 268 F.2d 544, 554 (5th Cir. 1959).

Thus when a motion under 12(b)(5) is filed and has merit, the district court has broad discretion in deciding whether to dismiss the action or to retain the action, quash defective service, and provide another opportunity to the plaintiff to effect proper service. *George v. U.S. Dept. of Labor, Occupational Safety &*

---

[4] The Advisory Committee's note to the 1993 amendment to Rule 4(m) states, "Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."

*Health Admin.*, 788 F.2d 1115, 1116 (5ᵗʰ Cir. 1986); *Williams v. Air-France-KLM, S.A.*, No. 3:14-CV-1244-B, 2014 WL 3626097, at *5 (N.D., Tex. July 23, 2014); *IntelliGender, LLC v. Soriano*, No. 2:10-CV-125-TJW, 2011 WL 903342, at *5 (E.D. Tex. Mar. 15, 2011), *citing Raburn v. Dae Woo, Inc.*, No. 3:09-CV-1172-G, 2010 WL 743933, at *4 (N.D. Tex. Mar. 3, 2010), *citing Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985).

When a challenge of insufficient service arises, the serving party has the burden to prove the validity of the service or good cause for his failure to effect timely service. *Holly v. Metro. Transit Auth.*, 213 Fed. Appx. 343, 344-45 (5ᵗʰ Cir. 2007), *citing Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5ᵗʰ Cir. 1993); *System Signs Supplies v. United States Department of Justice*, 768 F.2d 728, 729 (5ᵗʰ Cir. 1990). Usually the plaintiff meets its burden of showing proper service by producing the process server's return of service, which is generally accepted as *prima facie* evidence of the manner in which service was effected. *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7ᵗʰ Cir. 1993). If there is no defect in service visible on the face of the return, Rule 12(b)(5) requires the defendant to submit admissible evidence showing that service was not proper. *Nabulsi v. Nahyan*, No. Civ. A. H-06-2683, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009), *aff'd*, 383 Fed. Appx. 380 (5ᵗʰ Cir. June 17, 2010). If the defendant succeeds, to avoid

dismissal or having the service quashed, the plaintiff must provide admissible evidence showing that service was proper or creating a fact issue requiring an evidentiary hearing. *Id.*

Federal Rule of Civil Procedure 15(c)(1) provides that an amendment of the complaint relates back to the original pleading when

> (A) the law that provides the applicable statute of limitations allows relation back:
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out--or attempted to set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Plaintiff requests an opportunity to amend if the Court grants the Officer Defendants 12(b)(5) motion. Because the statute of limitations on all claims against them expired over two years ago, even though the claims arise out of the same conduct set forth in the original complaint, an amended complaint naming the proper officers could only relate back to the date of an original pleading under Rule 15(c)(3) if the defendant received notice of the filing of the original action so that he would not be prejudiced in

presenting a defense on the merits and if he "knew or should have known that, but for the mistake concerning the identity of the proper party, the action would have been brought against" him. Where a plaintiff originally fails to identify an officer defendant in the complaint not because of an error, mistake or misnomer, but because he did not know the officer's identity at all, if he seeks to amend his complaint to name that officer, the relation back doctrine does not apply. *Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998); *see also Whitt v. Stephens County*, 529 F.3d 278, 282-83 (5th Cir. 2008)(attempt to amend a complaint to substitute named defendants for John Does after the expiration of limitations was futile because the claims did not relate back, but were time-barred). The Fifth Circuit will infer notice to a misnamed or unidentified defendant if there is an "identity of interest" between the defendant named in the original complaint and the defendant that a plaintiff later seeks to add or substitute. *Jacobsen*, 133 F.3d at 320, *citing Moore v. Long*, 924 F.2d 586, 588 (5th Cir. 1991), and *Kirk v. Cronvich*, 629 F.2d 404, 407-08 (5th Cir. 1980). "'Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.'" *Id., quoting Kirk*, 629 F.2d at 408 n.4. As one example, "notice may be imputed to the new party through shared counsel." *Id., citing Barkins v.*

*International Inns, Inc.*, 825 F.2d 905, 907 (5th Cir. 1987).

## II. Factual Allegations of the First Amended Complaint (#8)

Plaintiff Dion Parker ("Parker") asserts that in the early evening of August 20, 2010 on returning to his residence at the Quail Valley Apartments at 1800 FM 1092, Missouri City, Fort Bend County, Texas he was stopped and questioned in the parking lot by Defendants Officer Badge #1003T and Unknown Officer, who were agents, servants, and/or employees of Missouri City, Texas and/or the Missouri City, Texas Police Department, acting under color of the state law of Texas and within the scope of their employment. As Parker asked the reason for their stop, an unknown female, subsequently identified as the victim of a crime that the two officers were investigating, appeared and told the two policemen that Parker was not the person who committed the crime against her. The two policemen went on to "berate Mr. Parker with a barrage of insults and unsolicited profanities." #8, ¶17.

Parker then started to walk to his apartment when the two police officers used tasers to strike Parker, causing him extreme pain and discomfort. He contends the police officers did not have an arrest warrant nor probable cause nor reasonable suspicion that he had committed a crime or was in the process of committing a crime. The two officers continued to beat Parker in violation of his constitutional rights to be free from unreasonable and unwarranted violations of his physical integrity. Neither officer

intervened nor attempted to stop the other from this use of excessive force, exhibiting extreme indifference and total disregard of Parkers's constitutional rights. They then arrested Parker, charged him with disorderly conduct/abusive vulgar language, and impounded Parker's vehicle, for which Parker later had to pay towing and storage costs. Subsequently the charges against Parker were dismissed by the County Court at Law No.3, Fort Bend County, Texas.

Parker claims that he suffered numerous lacerations, bruises, and abrasions to his torso and a concussion, as well as "excruciating pain and mental anguish" and loss of earning capacity caused by the unnecessary deployment of the taser gun. Parker states that he received medical attention for his injuries while in custody.

Parker asserts that Missouri City and its Police Department, "through its agents, permitted, encouraged and tolerated[] a pattern of practice and/or custom concerning the use of extreme and excessive force and the use of . . . Taser guns against citizens in direct contravention to federally protected rights," including "his constitutional rights to be free from injury, unlawful seizure, cruel and unusual punishment, extreme and excessive force, and loss of liberty without due process of law"; moreover they failed to "take any corrective action" in "extreme indifference and total disregard to the federally protected rights of citizens in general,

and Parker, in particular."  #8, ¶¶ 36, 44 and 37. Missouri City, its Police Department, and Chief of Police Fitzgerald purportedly failed to implement policies and training and/or failed to train and properly supervise officers concerning the use of extreme and excessive force and the use of tasers.  Parker further contends that Officer Badge No. 1003T and Unknown Officer's verbal assault and berating put Parker in fear for his personal safety and deterred him from engaging in otherwise lawful activity guaranteed to him under the First and Fourteenth Amendments to the Constitution.  All these acts, omissions and systemic failures constituted formal and informal policies, practices and customs that combined to deprive Parker of rights secured by the Constitution and federal laws.

As for his state-law assault and battery claim, Parker asserts that Missouri City and its Police Department are liable for the two officers' assault of Parker and employment of the taser gun pursuant to the theory of respondeat superior.

### III.  Applicable Substantive Law

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal

laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. *Id.*

Municipalities and other bodies of local government are "persons" within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). "A municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. *See also City of Canton v. Harris*, 489 U.S. 378, 392 (1989). The bar on vicarious liability means that the municipality can only be liable where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. 658. A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 690-91.

To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policy maker, (b) an official policy [or custom or widespread practice], and (c) a violation of constitutional rights whose "moving force" is the policy or

custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or policy that is the "moving force" behind the constitutional violation)(*citing Monell*, 436 U.S. at 694), *cert. denied*, 534 U.S. 820 (2001). The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris County Hospital District*, 426 Fed. Appx. 312, 316 (5th Cir. May 23, 2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).[5] Alternatively, a policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly

_____

[5] When a policymaker commits the act at issue, that act may establish the policy if the policymaker must be "unconstrained by policies imposed from a higher authority." *Okon*, 426 Fed. Appx. at 316, *citing Hampton Co. v. Nat'l Sur. LLC v. Tunica County*, 543 F.2d 221, 227 (5th Cir. 2008). In such a case the court must determine which official or government body has final policymaking authority for the local government unit regarding the action in dispute. *Id.*

represents municipal policy.'" *Id., citing id.*, and *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)("A pattern of conduct is necessary only when the municipal actors are *not* policymakers")[, *cert. denied*, 131 S. Ct. 3059 (2011)]. A plaintiff cannot conclusorily allege a policy or a custom and its relationship to the underlying constitutional violation; instead the plaintiff must plead specific facts. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997), *citing Fraire v. Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992).

"Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). "The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon*, 426 Fed. Appx. at 316, *citing Bennett*, 735 F.2d at 862. "'Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information,'" while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for

example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Id., citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).

"Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice"; it requires a plaintiff to show that "'in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010)(*quoting City of Canton*, 489 U.S. at 390), *cert. denied*, 131 S. Ct. 2094 (2011). "Usually a plaintiff must show a pattern of similar violations, and in the case of an excessive force claim . . . the prior act must have involved injury to a third party." *Id.; Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1959). "[A] single incident of an alleged constitutional violation

resulting from the policy may serve as a basis for liability so long as that violation was an obvious consequence of the policy. . . . [A] pattern of misconduct is not required to establish obviousness or notice to the policymaker of the likely consequences of his decision." *Brown v. Bryan County, OK.*, 219 F.3d 450, 460 (5th Cir. 2000), *citing City of Canton*, 489 U.S. at 396 ("Where a section 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of constitutional rights of their citizens, the dictates of *Monell* are satisfied.").

Ratification can also be a basis for governmental immunity when an authorized policymaker affirms that in performing the challenged conduct, the employee was executing official policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the

municipality because their decision is final."). Whether a governmental decision maker has final policymaking authority is a question of law. *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

To state a claim against a municipality under § 1983 that will not be dismissed under Rule 12(b)(6), an individual plaintiff can provide fair notice by "*inter alia* describ[ing] (1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; or (4) the specific topic of the challenged policy or training inadequacy. . . . Those types of details, together with any elaboration possible, help to (1) 'satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests,'and (2) 'permits the court to infer more than the mere possibility of misconduct.'" *Flanagan v. City of Dallas, Texas*, No. 3:13-CV-4231-M-BK, 2014 WL 4747952, at *3 (N.D. Tex. Sept. 23, 2014), *citing Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843-44 (S.D. Tex. 2011); *Twombly*, 550 U.S. at 555 n.3; and *Iqbal*, 556 U.S. at 679. For example in *Flanagan*, *id.* at *10, the district court found adequately pleaded a claim of excessive

force by the Dallas Police Department ("DPD") against the City

of Dallas to survive a Rule 12(b)(6) challenge:

> Plaintiffs have . . . pleaded several facts from
> which one could make a reasonable inference of a
> persistent, widespread practice by DPD officers or
> otherwise using excessive force rising to the level
> of a custom having the force of official City
> policy. In particular, Plaintiffs alleged in their
> amended complaint that (1) the policy of the DPD to
> shoot first and ask questions later; (2) Councilman
> Caraway informed the media that there were training
> issues within the DPD that had resulted in the
> killing of an unarmed individual; (3) Dallas is at
> the top of the list of police misconduct statistics
> in the South along with several other Texas cities;
> (4) Dallas is ranked number 11 in police misconduct
> incidents; (5) the total number of officer-involved
> shootings was 144; (6) 86 grand juries have been
> convened to investigate police misconduct (although
> only two indictments have been returned); (7) 60
> unarmed African-American men have been killed by DPD
> officers over the past 13 years; (8) at least 12
> other shootings of unarmed individuals by DPD
> officers took place during the year of Allen's death
> (Plaintiffs describe the derails of three of the
> shootings, all of which occurred after the incident
> involving Allen [and pointing out similarities to
> allegations regarding Allen's shooting in that the
> individuals involved were not provoking or resisting
> the police when they were shot]); and (9) there are
> 94 open DPD internal affairs investigation into
> officer-involved shootings.

The district court further noted, *id.* at *11,

> Plaintiffs allege that, on average, more than four
> unarmed people have been killed by DPD officers each
> year for the past dozen years and that there are
> nearly 100 open internal investigations into such
> shootings and have been nearly as many grand jury
> proceedings. While it is a close call, taking all
> of their allegations to be true, Plaintiffs have

pled sufficient facts, at the motion to dismiss stage, from which one could make a reasonable inference of a persistent, widespread practice by DPD officers of using excessive force rising to the level of a custom having the force of official City policy.

*Id., citing Oporto v. City of El Paso,* No. 10-CV-110-KC, 2010 WL 3503457, at *6 (W.D. Tex. 2010), and *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *12 (W.D. Tex. 2006).

The Fifth Circuit has held that a municipal police chief can be a final policymaker for § 1983 liability purposes where the plaintiff demonstrates that the police chief is the only "official responsible for internal police policy and where no other municipal officials "'comment authoritatively' on the internal procedures of the department." *Gordon v. Neugebauer*, Civ. A. Co. 1:14-cv-0093-J, 2014 WL 5531734, at *5 (N.D. Tex. Oct. 31, 2014), *citing Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010).[6]

_____

[6] In *Flanagan*, 2014 WL 4747952 at *13, the district court found the following allegations *inter alia* sufficient to plead that the City of Dallas failed "to provide proper training in the use of deadly force amounts to deliberate indifference to the rights of a person with whom the police come into contact":

(1) a witness stated that Allen was unarmed and complying with Officer Staller's instructions before Officer Staller shot him repeatedly; (2) at least 12 other shootings of unarmed individuals by DPD officers took place during the year Allen died, and over 60

-23-

State law where the district court sits determines whether a police department has the capacity to sue or be sued. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1999)(Under Texas law a city is "allowed to designate whether one of its own subdivisions can be sued as an independent entity."); *Crull v. City of New Braunsfels, Tex.*, 267 Fed. Appx. 338, 341 (5th Cir. 2008)("Unless the political entity that created the [police] department has taken 'explicit steps to grant the servient agency with jural authority,' the department lacks the authority to sue or be sued."); *Combs v. City of Dallas*, 289 Fed. Appx. 684, 686 (5th Cir. 2008)(per curiam). "In order for a plaintiff to sue a city department, it must enjoy a separate legal existence" from the city. *Darby*, 939 F.2d at 313. A police department usually is not a legal entity separate from the municipality it serves. *Jathanna v. Spring Branch Indep. Sch. Dist.*, Civ. A. No. H-12-1047, 2014 WL 6096675, at *3 (S.D. Tex. Dec. 7, 2013)(citing cases). Texas Local Gov't Code Ann. § 341.003

---

unarmed African-American men have been killed by DPD officers since 2001; (3) although Officer Staller had been the subject of several complaints, at least two of which involved inappropriate use of force, he was still permitted to carry a firearm; and (4) both Councilman Caraway and Chief Brown acknowledged the need for further DPD training.

("A home-rule municipality may provide for a police department.") grants all authority to a home-rule municipality to organize a police force to the city. *Darby*, 939 F.2d at 313. A Texas city therefore is permitted to decide whether one of its own subdivisions can be sued as an independent entity; without such authorization, a police department cannot be sued. *Id.*

"Missouri City is a home rule city, operating under a Charter adopted pursuant to Tex. Const. art. XI, § 5." *Berg Development Co. v. City of Missouri City*, 603 S.W. 2d 273, 273 (Tex. Civ. App.--Houston (14th Dist.) 1980, writ ref'd n.r.e.). Its Home Rule Charter, available on Missouri City, Texas' official website, in Article II, "Powers of the City," Sec. 22.01, "General powers," provides in relevant part, "The city shall have all the powers to perform and render all public services as are granted to municipal corporations and to cities by the constitution and laws of the State of Texas together with all of the implied powers of local self-government necessary to executed all such powers granted. The city may use a corporate seal; and by action of its city council may sue, may implead and be impleaded in all courts and places and in all matters whatever; and may be sued; and

through its city council or when so enumerated herein and not inconsistent with the constitution and laws of this state through its city manager or other officer . . . ."[7] Nowhere in the document does it give the Missouri City Police Department existence as a separate and distinct corporate entity with the capacity to sue and be sued.

A suit against a city police department officer in his official capacity is a suit against the governmental entity for which the individual defendant is an agent, here Missouri City, if Plaintiff does not demonstrate that the Missouri City Police Department received a grant of authority from Missouri City to engage in separate litigation. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *McHenry v. Stinnett Police Dep't*, No. 2:13-CV-0228-J, 2014 WL 3939512, at *4 (N.D. Tex. Feb. 14, 2014)(finding claims against four police officers in their official capacities were claims against the City of Stinnett).

Qualified immunity, an affirmative defense, protects government officials in their personal capacity performing discretionary functions not only from suit, but from

---

[7] Even the City Council, as referenced in the Missouri City's Home Rule Charter, is not a separate entity apart from a Missouri City and is not granted the authority to sue and be sued except in its role as the governing body of the City. *See, e.g., Skyway Towers LLC v. City of San Antonio*, Civ. No. 5:14-CA-410-DAE, 2014 WL 3512837, at *5-6 (W.D. Tex. July 14, 2014).

"liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, ____, 129 S. Ct. 808, 815 (2009). Thus the Court examines whether the "officer's conduct violated a constitutional right," as well as "whether the right was clearly established" at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Either prong may be addressed first. *Pearson*, 129 S. Ct. at 808. A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Werneck v. Garcia*, 591 F.2d 386, 392 (5th Cir. 2009)(citations omitted). *See also Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)(the court applies an objective standard "based on the viewpoint of a reasonable official in light of the information available to the defendant and the law that was clearly established at the time of defendant's actions."). To be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349-50

(5th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The 'clearly established' standard does not mean that official's conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'" *Id.* at 350, *quoting Anderson*, 483 U.S. at 640. "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012). Officials who act reasonably but mistakenly are entitled to qualified immunity; the defense protects all government employees but "the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001). The officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules

that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*).

Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law and that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the challenged actions. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

Parker claims that Missouri City, Texas is liable for inadequate police training and supervision. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v.*

*Thompson*, 131 S. Ct. 1350, 1359 (2011), *citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)("[A] 'policy of 'inadequate training'' is 'far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*).  To prevail on a failure to train police officers, the plaintiff must show "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow*, 614 F.3d at 170, *citing World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009).

To show that a municipality's failure to train was the "moving force" that caused the constitutional injury requires "a heightened standard of causation": "the plaintiff must establish a 'direct link' between the municipal policy and the constitutional injury," i.e., a connection "more than a mere 'but for' coupling between cause and effect"; "[t]he deficiency in training must be the actual cause of the constitutional violation." *Valle v. City of Houston*, 613 F.3d 536, 546 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2094 (2011), *citing City of* Canton, 489 U.S. at 391-92; *Brown v. Bryan*

*County, OK*, 219 F.3d 450, 461 (5ᵗʰ Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001); *Board of County Com'rs of Bryan County, OK v. Brown*, 520 U.S. 397, 404 (1997); and *Thompson v. Connick*, 578 F.3d 293, 300 (5ᵗʰ Cir. 2009).

A plaintiff may demonstrate a municipality's deliberate indifference to the need for proper training in two ways: (1) the most common way is to show "a pattern of constitutional violations similar to those at issue" in the plaintiff's case; and (2) a "single incident of injury [that} was highly predictable and patently obvious," a rarity. *Kitchen*, 759 F.3d at 474 "[T]here are limited circumstances in which an allegation of failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). "'[D]eliberate ignorance is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Commissioners v. Brown*, 520 U.S. 397, 410 (1997). Deliberate indifference for a failure to train requires the plaintiff to prove that the city policymaker disregarded "'known or obvious consequence of his action,' and that a particular omission in their training program would

cause city employees to violate citizens' constitutional rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). "[W]hen city policy makers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' rights, the city may be deemed deliberately indifferent if the policy makers choose to retain that program.[8]

The city's 'policy of inaction' in light of notice that its program will cause constitutional violation 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 1360, *citing Canton*, 489 U.S. at 395. Moreover municipal liability can only be imposed "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury.

---

[8] In *Flanagan*, 2014 WL 4747952 at *12, the district court found that Plaintiffs adequately pleaded deliberate indifference in factual allegations to support their claim that the police chief, as the City's final policymaker, "adopted or maintained the policy of police use of excessive force with deliberate indifference to its known or obvious consequences" and "was at fault for Allen's death":  "(1) Officer Staller's lack of information regarding Allen's description and the fact that he was unarmed; (2) Officer Staller's firing of ten bullets at Allen, seven of which struck him, and then attempting to reload his gun; (3) the shooting of 12 other unarmed individuals by DPD members in 2013; (4) the deaths of over 60 unarmed African-American men at the hands of DPD officer since 2001; and (5) the 94 open internal affairs investigations relating to officer involved shootings."

. . ." *Monell,* 436 U.S. at 694.

"A municipality may be liable for the failure of a policymaker to take precautions to prevent harm, provided that the omission is an intentional choice and not merely a negligent oversight. Negligent training will not support a § 1983 claim a against a municipality, nor is it sufficient to show that 'injury or accident could have been avoided if an officer had better or more training.'" *Boston v. Harris County, Texas*, No. Civ. A. H-11-1566, 2014 WL 1275921, at *90 (S.D. Tex. Mar. 26, 2014), *citing City of Canton*, 489 U.S. at 390.

To prevail on a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must show (1) that he was seized,[9] (2) that he suffered an injury, (3) which "resulted directly and only from the use of force that was excessive to the need, and that (4) the force used was objectively unreasonable." *Flores v. Palacios*, 391 F.3d 391, 396 (5th Cir. 2004). To decide whether the seizure was objectively reasonable, the court must ask if the totality of the circumstances justified that kind of search or seizure. *Id.,*

_____

[9] A seizure may be evidenced "by means of physical force or show of authority" when the officer has "in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

*citing Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). The objective reasonableness of the force used requires the court to balance the amount of force used against the need for that force. *Id.* at 399. The injury must "be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005)(finding plaintiff failed to show requisite injury because he did "not allege any degree of physical harm greater than *de minimis* from the handcuffing"); *Glenn v. City of Tyler*, 22 F.3d 307, 315 (5th Cir. 2001)(concluding that "handcuffing too tightly, without more, does not amount to excessive force"). Only substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment. *Flores*, 381 F.3d at 397-98.

Regarding a false arrest claim,[10] "a police officer must make a determination of probable cause before he causes any significant pretrial restraint of liberty." *Martin v. Thomas*,

---

[10] Under Texas law for a claim of false imprisonment a plaintiff must show "(1) willful detention, (2) without consent, and (3) without authority of law." *Davila v. U.S.*, ___ F.3d ___, 2012 WL 1337387, *10 (5th Cir. Apr. 3, 2012), *quoting Martinez v. English*, 267 S.W. 3d 521, 529 (Tex. App.--Austin 2008)(*citing Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W. 502, 506 (Tex. 2002).

973 F.2d 449, 453 (5th Cir, 1992). Probable cause exists when the facts within the officer's knowledge and the facts of which he has reasonably reliable information would be sufficient to believe that the suspect was committing or had committed an offense. *United States v. Morris*, 477 F.2d 657, 663 (5th Cir. 1973); *Beck v. Ohio*, 379 U.S. 89, 91 (1964). *See also Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)("Probable cause exists when the totality to the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect has committed or was committing an offense."). In deciding whether probable cause exists, police officers are not required to be perfect, nor do they have to err on the side of caution "out of fear of being sued." *Martin*, 973 F.2d at 453. The Fifth Circuit, *id.*, quoted *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964),

> "Whether an arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it--whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

A claim for false arrest does not depend upon the

validity of each individual charge, but on the validity of the arrest as a whole; if there is probable cause for any of the charges made, the arrest is supported by probable cause and the claim for false arrest fails. *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

If the officer's determination is reasonable under the circumstances, he may be protected by qualified immunity. *Martin*, 973 F.2d at 453. If the officer raises a qualified immunity defense, "the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010). "[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to [qualified] immunity." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

There is no federal statute of limitations for claims arising under 42 U.S.C. § 1983, so the Court applies the general statute governing personal injuries in the forum state. *Humphreys v. City of Ganado, Texas*, 467 Fed. Appx. 252, 255 (5th Cir. Mar. 26, 2012), *citing Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005)(per curiam). Under Texas law the statute of limitations for a § 1983 claim is two

years, based on Tex. Civ. Prac. & Remedies Code § 16.003 ("[A] person must bring suit for . . . personal injury . . . not later than two years after a cause of action accrues."). *See Cudra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 n.7 (5th Cir. 2010); *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989). While Texas law establishes the statute of limitations, federal law determines when a claim under § 1983 accrues. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). "Under federal law, a cause of action arises 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992), *quoting Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). Where a plaintiff sues for damages for false arrest in violation of the Fourth Amendment under § 1983 and the arrest is followed by criminal proceedings, limitations begins to run at the time the plaintiff is detained in accordance with legal process. *Wallace v. Kato*, 549 U.S. 384, 397 (2007). In this case Parker's claims arise on the date of the incident, August 20, 2010. Because Parker's claims arose out of events occurring on August 20, 2010, including his arrest, he had actual knowledge of the facts giving rise to his claims so they accrued on that date.

Therefore the two-year statute of limitations for his claims under § 1983 and the federal Constitution expired on August 20, 2012. Parker, *pro se*, filed his original Complaint (#1) on the deadline, August 20, 2012.

State-law claims for assault and battery may not proceed under § 1983. *George v. Harris County, Texas*, Civ. A. No. H-10-3235, 2012 WL 2744332, at *8 (S.D. Tex. July 9, 2012), *citing Smith v. Spina*, 477 F.2d 1140, 1143-44 (3d Cir. 1973)(assault and battery arises under state law, not § 1983). The statute of limitations for assault and battery under Texas law is two years. *Alvarado v. Shipley Donut Flour & Supply Co.* 526 F. Supp. 2d 746, 766 n.49)(S.D. Tex. 2007), *citing* Tex. Civ. Prac. & Rem. Code § 16.003.

The State of Texas has sovereign immunity and its municipalities and political subdivisions have governmental immunity except where the Legislature waived that immunity in the TTCA. *Humphreys v. City of Ganado, Texas*, 467 Fed. Appx. 252, 256 (5th Cir. Mar. 26, 2012), *citing* Tex. Civ. Prac. & Rem. Code § 101.021, and *Reata Constr. Corp. v. City of Dallas*, 197 S.W. 3d 371, 374-76 (Tex. 2006). The terms "sovereign immunity" and "governmental immunity" are not synonymous; "sovereign immunity relates to the State of Texas' immunity from suit and liability," while "governmental immunity" protects cities, counties, school

districts and other political subdivisions from suit and liability. *Cunningham v. City of Balch Springs*, No. 3:14-CV-59-L, 2014 WL 4851576, at *6 fn. (N.D. Tex. Sept. 30, 2014), *citing Wichita Falls State Hosp. v. Taylor*, 106 S.W. 3d 692, 694 n.3 (Tex. 2003). The Texas Legislature's limited waiver of sovereign immunity is for tort claims arising out of the use of publicly owned automobiles, for premises defects, and for injuries arising out of conditions or use of property. Tex. Civ. Prac. & Rem. Code § 101.021. It does not waive immunity for intentional torts, such as assault and battery, malicious prosecution, false arrest. *See, e.g., Muhammad v. Newell*, 3-08-CV-1426-BD, 2009 WL 2482142, at *3 (N.D. Tex. Aug. 12, 2009)(limited waiver of TTCA "does not extend to claims 'arising out of assault, battery, false imprisonment, or any other intentional tort"); *Chalmers*, 2014 WL 1778946, at *4 (false imprisonment).

## IV.  Missouri City and its Police Department's Motion to Dismiss Pursuant to §§ 101.001, *et seq.* of the TTCA and Rule 12(b)(6)(#9)

Missouri City and its Police Department (collectively, the "City Defendants") focus on the events of August 20, 2010, Parker's filing of his First Amended Complaint on June 17, 2014, and his failure to serve or even attempt to serve the City Defendants until June 13, 2014, nearly four years after

the incidents giving rise to this suit. They note that Parker has apparently done no investigation to identify Police Officer Badge No. 1003T or the Unknown Officer.[11] While they assert that they can raise an affirmative defense of statute of limitations, they request the Court to dismiss all of Plaintiff's claim against them pursuant to the TTCA and Rule 12(b)(6).

The City Defendants identify four issues and the reason(s) why each should be dismissed.

First, both federal and state claims against the Missouri City Police Department should be dismissed because it is not a separate legal entity from Missouri City. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)(failure to show that the City of Pasadena granted its police department the capacity to engage in litigation means the police

---

[11] In footnotes, Defendants state that Parker mailed s summons to Joel Fitzgerald, Sr. ("Fitzgerald") at the Missouri City Police Department on June 13, 2014. Fitzgerald has not been the Police Chief since December 2013 and thus service has not been effected on him. Moreover Defendants maintain that "[t]here is no [Officer Badge No. 1003T] who has ever existed who was employed by Missouri City. The officer who was primarily involved in the incident with Plaintiff had a similar but not identical badge number. That officer is no longer employed by Missouri City. Thus, mailing the summons to the City does not constitute effective service at this time." #9, p. 2 n.2. Furthermore Missouri City asserts that it does not know who "Unknown Officer" is and service thus has not been properly effected on that person.

department had no jural existence).

Second, the state-law claim of assault [and any other intentional tort] against Missouri City should be dismissed because it has governmental immunity since the claim does not fall within the limited waiver of sovereign immunity contained in the TTCA for claims arising out of (1) use of motor-driven vehicles and motor-driven equipment, (2) the condition or use of real property, and (3) the condition or use of tangible personal property. Tex. Civ. Prac. Remedies Code § 101.021; *City of Denton v. Page*, 701 S.W. 2d 831, 834 (Tex. 1986). Furthermore, governmental units are immune from tort claims arising out of intentional torts committed by public employees, even when the limited waiver of immunity would otherwise apply. Tex. Civ. Prac. & Rem. Code § 101.057(2). Moreover, the TTCA "does not apply to a claim . . . arising out of assault, battery, . . . or any other intentional tort . . . ." Tex. Civ. Prac. & Rem. Code § 101.057; *Tarrant County Hosp. Dist. v. Henry*, 52 S.W. 3d 434, 441 (Tex. App.-- Fort Worth 2001, no pet.).

Third, Parker's claims under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments should be dismissed under Rule 12(b)(6) for failure to plead sufficient facts to

make a plausible claim for relief. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. 555. A city cannot be liable under § 1983 merely because it employed a tortfeasor. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). To prevail on a Section 1983 claim against a municipality, a plaintiff must prove three elements: (1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose moving force is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell*, 436 U.S. at 694. Parker's conclusory assertion that Defendants failed to adequately and properly instruct, train and supervise its officers "on the applicable standard of law or false imprisonment, malicious prosecution, and civil rights violations under Title 42 U.S.C. § 1983." Parker does not identify a policy maker, an unconstitutional official policy or custom, or a specific constitutional violation whose driving force was because of a policy or custom of Missouri City. *See Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997)(allegation that an officer was acting "in compliance with the municipality's customs, practices or procedures" is insufficient because it is conclusory); *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)(description

of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory, but must contain specific facts).

Last, the Fourteenth Amendment claims should be dismissed because the Supreme Court has rejected that Amendment as a basis for a claim of excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Where a constitutional provision "provides an explicit textual force of constitutional protection, a Court must assess a plaintiff's claim under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999), *quoting Graham*, 490 U.S. at 395; *Albright v. Oliver*, 510 U.S. 266, 273 (1994). A claim for excessive force in an arrest situation must be asserted under the Fourth Amendment and its reasonable standard rather than the Fourteenth Amendment under its substantive due process approach. *Graham*, 490 U.S. at 395. The Court agrees that as a matter of law Parker's claim of excessive force must be brought under the Fourth Amendment and thus dismisses Parker's excessive force claim under the Fourteenth Amendment. *Id.*

**A. Parker's Response (#16)**

Parker insists he has sufficiently pleaded his claims under § 1983. He named Chief of Police Fitzgerald in his official and individual capacities as failing to implement policies and training and/or failing to train and properly supervise officers concerning the use of extreme and excessive force in paragraphs 38 and 44 of his Amended Complaint. He also asserted in paragraph 41 that Missouri City failed to implement a policy to adequately train, screen and/or supervise its officers involved in the incident that deprived Parker of his constitutional rights. There is no heightened pleading requirement for suits under § 1983. If the Court disagrees, Parker requests an opportunity to amend.

As for Defendants' request that all state claims against Fitzgerald, Officer Badge No. 1003T and Unknown Officer be dismissed under § 101.106 of the Texas Civ. Prac. & Rem. Code, Parker argues that the request should be denied under § 101.057 of that Code.

## B. Court's Decision

Plaintiff has failed to and cannot allege facts demonstrating that the Missouri City Police Department is a legal entity separate from Missouri City and has been given the right to sue and be sued by Missouri City, so Parker's

claims against the Police Department and police officers in their official capacities fail as a matter of law under both the TTCA and § 1983 and the federal Constitution. *See* pages 24-26 of this Opinion and Order.

The Texas Supreme Court has held that all common-law tort claims alleged against a governmental unit are assumed to be under the TTCA. *Franka v. Velasquez*, 332 S.W. 3d 367, 379, 385 (Tex. 2011). As a matter of law, this Court concludes that Parker fails to state a tort claim against Missouri City and its Police Department under the TTCA. As noted, Missouri City is entitled to governmental immunity under the TTCA for intentional torts such as those Parker has expressly, impliedly, or potentially made here, e.g., assault and battery, false arrest, false imprisonment, and malicious prosecution.

If Parker's claim against Missouri City for inadequacies in hiring, training and/or supervising police relating to use of excessive force, false arrest, and unlawful detainment is grounded in negligence, under the TTCA that claim also fails because it does not fall within the three areas of liability for which the TTCA waived immunity under Tex. Civ. Prac. & Rem. Code § 101.021: injury caused by an employee's use of a motor-driven vehicle, by a condition or use of tangible personal or real property, or by

premises defect.

Thus the Court grants Defendants Missouri City, Texas and Missouri City, Texas Police Department's motion to dismiss Parker's state-law tort claims pursuant to Section 101.001, *et seq.*, of the TTCA and Rule 12(b)(6) against both of them (instrument #9).

As for the § 1983 claims against Missouri City, the Court agrees with Missouri City that Parker's claims are conclusory and that he has failed to allege sufficient facts to state plausible claims. Parker has not adequately pleaded a policymaker or an official policy which caused Parker's constitutional rights to be violated. See pages 16-23 of this Opinion and Order. Given the few days that counsel had to appear, file, and serve an amended complaint within the deadline established by Magistrate Judge Stacy, the Court will grant leave to Parker's counsel to file an amended pleading in an effort to satisfy Rule 12(b)(6) pleading standards for his § 1983 constitutional claims against Missouri City.

## V. Fitzgerald, Officer Badge No. 1003T, and Unknown officer's Amended Motion to Dismiss for Insufficient Service or Process (#14)

As noted, Parker filed his original Complaint on August 20, 2012, but failed to serve Defendants Missouri City, the Missouri City Police Department, Fitzgerald, Officer Badge

No. 1003T, and Unknown Officer (the last three collectively, "Officer Defendants") before the 120-day period for service expired on December 18, 2012. Only after another sixteen months passed did Plaintiff on May 12, 2014 file a motion to extend time to serve summons (#2). On May 22, 2014 United States Magistrate Judge Frances Stacy granted the motion, stating that "Plaintiff shall have thirty days from the date this Order is entered, *and no longer* [emphasis in original]" to serve Defendants. #4, copy at Ex. A to #14. That thirty-day deadline expired on June 21, 2014 without proper service being effected on the Officer Defendants.[12] The Officer Defendants argue that because they were not timely and properly served within the time specified in the Magistrate Judge's order, service of process is defective and Parker's claims against them should be dismissed with prejudice. Furthermore they maintain that as a result of the defective service of process, the Court lacks personal jurisdiction over them.

Moreover from the commencement of the suit, Officer Badge

---

[12] The Court notes that up until June 14, 2014 Parker was proceeding *pro se*. On that date, Mr. Athill Muhammad filed a notice of appearance on behalf of Parker, and on June 17, 2014 filed the First Amended Complaint (#8). Counsel filed proof of service by certified mail, return receipt requested, on Missouri City, Texas and on its Police Department on July 11, 2014 (#10). Officer Defendants contend that service was improper, as discussed *infra*.

No. 1003T and Unknown Officer were misidentified or wrongly named Defendants. Officer Defendants urge the Court to dismiss the claims against them with prejudice.

More specifically, regarding service as to Fitzgerald, Officer Defendants contend that because Fitzgerald retired from the Missouri City Police Department in December 2013 and lives and resides in Allentown, Pennsylvania, where he is now the Chief of Police, Parker's attempt to serve him by mail sent to the Missouri City Police Department did not satisfy the requirements for service on an individual under Rule 4(e) (personal service, service at his residence, service by an authorized agent, or other means by state law), nor was service effected in accordance with the Court's order by June 21, 2014, and thus Parker did not provide Fitzgerald with proper notice of the suit. Moreover, they insist, there is no good cause for Plaintiff's delay and failure of service.

As to Officer Badge No. 1003T, Parker again sent service of process by certified mail to him at the Missouri City Police Department (Ex. C, Return of Service). Defendants maintain that Badge No. 1003T is not a badge number format used by the Police Department and does not exist. Moreover, the officer on the scene at the time of the incident was Heechal Hwang ("Hwang"), Badge No. 10035. Hwang no longer

works at the Missouri City Police Department, and thus Parker's attempt to serve him by mail directed to the Missouri City Police Department also fails to meet the requirements of service on an individual under Rule 4(e). Nor is there good cause for Parker's delay and failure of service on Hwang. Thus the claims against him should also be dismissed with prejudice.

As for Unknown Officer, Plaintiff again directed service of process to the Missouri City Police Department, which has over one hundred officers and employees. Therefore the Police Department did not have sufficient information to determine which employee or officer Plaintiff was trying to serve as a necessary party to his suit. The service also did not satisfy Rule 4(e) nor meet the Court's June 21, 2014 service deadline. Nor does Parker show good cause for his delay and failure of service.

In addition, under Federal Rule of Civil Procedure 10(a), a complaint's caption must identify all parties by name to provide notice to the named individuals that they are being sued. Officer Badge No. 1003T and Unknown Officers are misidentified and thus not proper parties to this suit, were not provided with notice that Plaintiff had sued them in their

individual capacities within the statute of limitations nor within the Court-ordered extended deadline, and the statute of limitations was not tolled as to them, argue Officer Defendants. *Eison v. McCoy*, 146 F.3d 468, 471 (7th Cir. 1998). Thus for this reason claims against these two Officers should be dismissed with prejudice.

Officer Defendants further insist that no good cause exists for Parker's failure to serve them properly within the thirty-day extension granted by the Court.

## A.  Parker's Response (#20)

Pointing out that he originally proceeded *pro se,* but is now represented by counsel, Parker asserts that a defense of insufficient service of process is waived unless it is made in a motion under Rule 12(b)(4) or (5) in the first responsive pleading or in an amendment to the first responsive pleading allowed as a matter of course.  Fed. R. Civ. P. 12(h)(1)  The responsive pleading to Parker's amended petition, which was filed on June 17, 2014, was due on or before July 11, 2014, but Defendants did not file such a motion.  Thus, contends Parker, Defendants have waived their objection to sufficiency of service or process and their motion should be denied.

Parker further alleges that Fitzgerald, Officer Badge No.

1003T, and Unknown Officer were "noticed by way of defendants'
[*sic*] Missouri City, Texas Police Department's motion to
dismiss," which specifically referenced each of them, and
because the same attorney, Steven D. Selbe, represents
Missouri City, its Police Department, and the Officer
Defendants. *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir.
1998)(because city attorney answered on behalf of city and
officers, and thus "presumably investigated the allegations,"
correct officers were put on notice of suit).

Regarding identification of Officer Badge No. 1003T and
Unknown Officer, in federal question cases a court may allow
a plaintiff an opportunity to identify an unknown defendant
through discovery unless discovery will not reveal the
defendant's identity. *Gillespie v. Civilette*, 629 F.2d 637,
642 (9th Cir. 1980). Parker states that on or about August 4,
2014 he made discovery requests, which, if answered, should
allow him to discover the true identity of Officer Badge No.
1003T and Unknown Officer.

If the Court finds that service on the Officer Defendants
was defective, Parker requests leave to file a motion for
leave to re-serve them in accordance with Federal rules. He
did attempt to serve these Defendants within the prescribed

time allotted by the magistrate judge at the enforcement agency where they were employed and which had control over them at all relevant times concerning the incidents giving rise to this suit, and thus he has not repeatedly failed to cure any service defects nor was he lax in serving them.

## B. Officer Defendants' Reply (#23)

Officer Defendants contend that Plaintiff provided no evidence that service was properly effected under Rule 4(e)(1) or (2) by the magistrate judge's deadline of June 21, 2014. They reiterate the reasons why Parker wrongly attempted to serve them by mail addressed to the Police Department. A quick search on Google would have revealed that Fitzgerald resigned from the Police Department in December 2012 and is currently Police Chief in Allentown, Pennsylvania.[13] Moreover almost four years have passed since the incident giving rise to Parker's claims, but he made no attempt to identify the officer who actually arrested him ("Badge No. 1003T"). That officer no longer works for the Missouri City Police Department, where Parker attempted to serve him. The identity of that officer and his status could have been discovered by a simple open records request under Texas law. They insist

---

[13] The Court finds that Officer Defendants are correct.

Parker cannot show good cause for his failure to properly serve them. Therefore they ask the Court to grant their 12(b)(5) motion with prejudice.

Furthermore Officer Defendants maintain that they did not waive their defense of insufficient service because they properly objected and raised the issue in their Rule 12(b)(5) motion and have not filed an answer and/or otherwise appeared or participated in the suit. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1021 (5th Cir. 1995).

## C. Court's Decision

Regarding the issue of waiver, after Parker failed to serve his original complaint for two years, Magistrate Judge Stacy extended Parker's time to serve Defendants until June 21, 2014. Because the Magistrate Judge in her discretion extended the time for service, the Court accepts her decision. Parker then obtained counsel, who filed an appearance on June 14, 2014 and, since no Defendant had filed a responsive pleading, permissibly filed an amended complaint on June 16, 2014. On July 11, 2014, counsel filed purported proofs that he had served summons and complaint personal service for all Defendants at the Missouri City Police Department on June 19, 2014, before Judge Stacy's deadline. Defendant Officers, who

maintain that they were never properly served and did not have notice of the suit, filed their Rule 12(b)(5) motion to dismiss for insufficient service on July 25, 2014. Defendants's 12(b)(5) motion was their first response in this suit and was timely and thus they did not waive their defense to this suit.

The service was deficient. Failure to show strict compliance with the Texas Rules for service "renders the attempted service of process invalid and of no effect." *Uvalde Country Club. v. Martin Linen Supply Co.*, 690 S.W. 2d 884, 885 (Tex. 1985)(per curiam); *Hubicki v. Festina*, 226 S.W. 3d 405. 408 (Tex. 2007). First of all, the proofs of service on the Officer Defendants filed by Parker did not meet the requirement under Texas Rule of Civil Procedure 107(c)[14]: "When citation was served by registered or certified mail as authorized by Rule 106, the return by the officer or authorized person must also contain the return receipt with the addressee's signature." *See Pharmkinetics Labs, Inc. v. Katz*, 717 S.W. 2d 704, 706 (Tex. App.--San Antonio 1986, no pet.)(Service is fatally defective "where the citation states one name, but the same was mailed to and served on a person

---

[14] Thus it also failed to meet the requirement of Federal Rule of Civil Procedure 4(e)(1).

with a different name."); *P&H Transp. v. Robinson*, 930 S.W. 2d 857, 860 (Tex. App.-Houston [1st Dist.] 1996, writ denied)( "If someone other than the defendant named in the citation is served with process, the court [does] not secure jurisdiction over the named defendant."); *Keeton v. Carrasco*, 53 S.W. 13, 19 (Tex. App.-San Antonio 2001)("If the return receipt is not signed by the addressee, the service of process is defective."); *Todd v. Sport Leasing & Financial Services Corp.*, No. 01-10-00608-CV, 2011 WL 5617872, at *2 (Tex. App.-- Houston [2st Dist.] Nov. 17, 2011 (and case cited therein).

Nor did Parker satisfy Federal Rule of Civil Procedure 4(e)(2) because he attempted service by certified mail, return receipt requested.

According to Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, and Adam N. Steinman in 5A *Fed. Prac. & Proc.: Civil* § 1321 (3d ed. database updated Sept. 2014), "[w]hen a plaintiff is ignorant as to the true identity of a defendant at the time of filing the complaint, most federal courts typically will allow the use of a fictitious name in the captions so long as it appears that the plaintiff will be able to obtain that information through the discovery process; should that not prove to be true, the action will be dismissed." Parker claims that he has served discovery requests on Defendants. The Fifth Circuit has

held that a plaintiff is entitled to conduct discovery to determine the identity of an unnamed defendant when it is "conceivable that readily available documentation would reveal" his or her identity. *Coward v. Dallas County Jail*, 439 Fed. Appx. 332, 332-33 (5th Cir. Aug. 24, 2011), *citing Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992).[15] Moreover Defendants' response indicates that they have likely already identified from their records that the "Officer Badge No. 1003T" involved in the incident was probably Hwang. Nevertheless, the Court is not persuaded that equitable extension of limitations is warranted here.

Because service on all three Officer Defendants was deficient, the Court lacks jurisdiction over them. Moreover, the statute of limitations expired more than two years ago. It

---

[15] In *Green v. John Doe*, 260 Fed. Appx. 717 (5th Cir. Dec. 28, 2007), the Fifth Circuit opined regarding Plaintiff Green's appeal of the dismissal of his case against an unidentified correctional officer for alleged violation of Green's Eighth Amendment rights,

> To deny Green the opportunity to amend his complaint where he has diligently sought to discover the identity of "John Doe" would be tantamount to eliminating the use of a "John Doe" in bringing any suit. The only reason to sue a "John Doe" is to conduct discovery backed by the authority of the court, but where the amendment cannot relate back and the court incorrectly denies discovery, the "John Doe" has become a nullity. Although the use of a "John Doe" is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants. *See Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 n.20 (5th Cir. 1993).

is significant that Parker has still not shown good cause for waiting almost four years to learn the identities of the two unidentified officers or the locations of all three.  Nor has he shown that within the 120-day period after the original complaint was filed the three officers had notice of the action and that it would have been brought against them but for Parker's failure to serve them, especially given the fact that he did not serve Missouri City until almost four years after the event giving rise to this action. Without explanation or showing of good faith, Parker also waited until nearly the end of Magistrate Judge's generous thirty-day extension for service to find counsel, apparently too late for counsel to identify and/or locate the Officer Defendants or even to plead a plausible complaint under § 1983 against them.[16]  Moreover even if, at this extremely late date, the Court permitted Parker to have discovery regarding the identity of the two unknown officers  and their whereabouts so that he could amend his complaint to name them and effect proper service on them, a second amended complaint against

---

[16]  The Court agrees with Fitzgerald that it was easy to locate him as the Chief of Police in Allentown, Pennsylvania through the internet, but Parker was anything but diligent in failing to do so by Google, internet search, or any other means.

them would not relate back for limitations purposes under *Jacobsen and Osborne*, 133 F.3d at 320-211. Since there is no dispute that he knew of his injury more that four years ago, his lack of diligence makes equitable tolling of the statute of limitations inappropriate. Furthermore the passage of time and changes in their circumstances would surely prejudice the Officer Defendants in attempting to defend against this suit.

Accordingly, for these reasons, the Court grants the Officer Defendants' motion to dismiss for insufficient service of process with prejudice.

## Court's Order

For the reasons stated above, the Court

ORDERS that

(1) Defendants Missouri City, Texas and Missouri City, Texas Police Department's motion to dismiss all claims against them under the TTCA is GRANTED;

(2) Defendants Missouri City, Texas and Missouri City, Texas Police Department's motion to dismiss all § 1983 claims against the Missouri City Police Department because it is not a separate entity authorized by Missouri City to sue and be sued is GRANTED;

(3) Defendant Missouri City, Texas's motion to dismiss all § 1983 claims against it for failure to state a claim

for which relief can be granted is GRANTED, but Parker is granted leave to file within twenty days of entry of this Opinion and Order an amended pleading of his claims against Missouri City that satisfies Rule 12(b)(6) and the requirements of 42 U.S.C. § 1983; and

(4) Official Defendants' motion to dismiss for insufficient service of process is GRANTED with prejudice.

**SIGNED** at Houston, Texas, this __10th__ day of __December__, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE