UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DION W PARKER,                            §
                                          §
            Plaintiff,                    §
VS.                                       §   CIVIL ACTION NO. 4:12-CV-2484
                                          §
MISSOURI CITY, TEXAS; MISSOURI            §
CITY, TEXAS POLICE DEPARTMENT;            §
MISSOURI CITY, TEXAS POLICE               §
CHIEF JOEL FITZGERALD, SR., in            §
is Individual and Official               §
Capacities; MISSOURI CITY,TEXAS          §
POLICE OFFICER BADGE NO. 1003T,           §
in his Official and Individual           §
Capacities; MISSOURI CITY,TEXAS          §
UNKNOWN POLICE OFFICER, in his           §
Official and Individual                   §
Capacities; and TASER                     §
INTERNATIONAL, INC.,                      §

**OPINION AND ORDER**

The Second Amended Complaint (instrument #30) in the above referenced cause alleges violation of Plaintiff Dion W. Parker's ("Parker's") right to be free from injury, unlawful seizure, cruel and unusual punishment, excessive force, loss of earning capacity,  and loss of liberty, and complaining of failure to intervene and failure to implement a policy of intervention against attacks by police officers, failure to adequately train police officers on the use of force against citizens, and failure to investigate and to have any policy requiring investigation of the uses of force by police officers against

complaining citizens under 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment of the United States Constitution.   Pending before the Court is Defendant Missouri City, Texas's ("Missouri City's")[1] second Rule 12(b)(6) motion to dismiss Plaintiff's 42 U.S.C. § 1983 claims (instrument #31).

Missouri City is the sole defendant sued in Parker's Second Amended Complaint.[2]

### Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).   The plaintiff's legal conclusions are not entitled to the same assumption.   *Ashcroft*

---

[1] The complaint states that Missouri City is an incorporated political subdivision of the State of Texas, enabled by the Constitution of the State of Texas to create and maintain a police force.  It has the power and authority to promulgate and does promulgate policies for the Missouri City Police Department.

[2] For an explanation why Missouri City is the appropriate party to sue for misconduct by its Police Department, see this Court's previous Opinion and Order (#29 at pp. 24-26).

*v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a

complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).

### Factual Allegations of the Second Amended Complaint

Parker asserts that in the early evening of August 20, 2010 on returning from his job as a construction worker to his residence at the Quail Valley Apartments at 1800 FM 1092,

Missouri City, Fort Bend County, Texas, he overheard Missouri City Police Department officer Heechul Hwang ("Hwang"), Badge #1003T, driving by in a patrol car, say, "Call off the search I got the suspect." Hwang allegedly got out of his patrol car and walked toward Parker, using rude and abrasive language laced with profanities. An unknown female, later determined to be the victim of an alleged crime, came up to them and told Hwang that Parker was not the person who committed the crime. Hwang continued berating Parker, who began walking toward his apartment. Hwang grabbed Parker and threw him into the side of the police car, physically assaulted Parker, and struck him in the torso with a Police-Department-issued electronic weapon. Parker claims that he was not disturbing the peace, was not intoxicated, and had no weapon. He charges that without probable cause or reasonable suspicion that Parker had committed any crime, Hwang continued his unprovoked assault on Parker, now lying spread eagle on the ground, and kicked him. Other officers, including Officer Hill and Sergeant Luera, responded to a call for backup and arrived on the scene, but did not intervene to stop Hwang's assault, thereby depriving Parker of his constitutional right to be free from injury, unlawful seizure, cruel and unusual punishment, excessive force, loss of economic capacity, and loss of liberty without due process of law. Sergeant Luera also deployed his electronic device against

6/35

Parker.   Hwang  then  arrested  Parker  and  charged  him  with disorderly  conduct  and  use  of  abrasive  and  vulgar  language. Subsequently  after  Parker  spent  several  days  in  jail,  during proceedings  in  the  County  Court  at  Law  No.  3  in  Fort  Bend County,  Texas,  the  charges  against  him  were  dismissed.

Parker  asserts  claims  for  various  kinds  of  damages.   He suffered  numerous  lacerations  and  a  concussion,  and  suffered "excruciating  physical  pain  and  mental  anguish"  now  and  in  the future  caused  by  the  beating  and  deployment  of  the  electronic weapons.   Because  Hwang  had  Parker's  car  impounded  from  his residence  parking  lot,  to  retrieve  it  Parker  incurred  costs  for towing  and  storage  of  his  vehicle.   He  also  seeks  money  damages for  loss  of  earning  capacity  caused  by  Defendants'  actions.   In addition  he  seeks  injunctive  relief

Parker  filed  a  formal  complaint  with  the  Missouri  City Police  Department  and  demanded  an  internal  affairs investigation,  but  never  received  any  response  from  the  Police Department  or  Missouri  City.

Parker  states  that  the  Missouri  City  Police  Department  was awarded  a  grant  from  the  U.S.  Department  of  Justice  to  purchase hand-held  taser  units  for  all  its  officers.   Ex.  A  to  #30. After  sending  out  requests  for  bids,  two  manufacturers,  Taser International,  Inc.  and  Stinger  Systems,  Inc.  ("Stinger") submitted  bids.   The  Police  Department  selected  and  purchased  57

model S-200 AT Stinger weapons from Stinger even though that weapon did not include any medical documentation and was not proven on the market.  The S-200 AT stinger delivers over 6,000 volts of electricity to the targeted person and often causes strong muscle contractions that frequently result in seizures or cause ventricular fibrillation, a sudden irregular heartbeat, and it penetrates up to two inches of a targeted area.  The device has been classified as a firearm by the Bureau of Alcohol, Tobacco, and Firearms.

Parker argues that the Missouri City Police Department has a policy allowing officers to use force against citizens who exhibit active resistance toward them.  Exhibit B to #30. "Active resistance" is defined as "[a]ny verbal or physical action by a subject that attempts to prevent an officer from gaining control of the subject, but is not assertive in nature, e.g., twisting, pulling/jerking away, holding on to an object, fleeing."  Parker contends that the policy, custom, or practice is vague and fails to define what verbal action a citizen must employ or how he is to exhibit flight in order to be deemed "actively resisting" an officer, where there is no probable cause or reasonable suspicion for detention.  Thus as written, the policy could be applied unconstitutionally, as he claims happened in his case.  Moreover the level of force is left up to an officer's "unbridled discretion," including deployment of an

8 / 35

electronic device and kicking the subject.  He asserts that "Missouri City policymakers had either actual or constructive knowledge that by application of this deficient policy, practice and custom by its officers it would and did deprive [Parker] of his rights as guaranteed by applicable Federal law."  Parker maintains that these policies, customs, and practices show deliberate indifference on the part of the Missouri City policy makers about the foreseeable effects and consequences of these policies with regard to the safety and rights of individual citizens.  Furthermore they are directly linked to the injuries Parker suffered and the deprivation of his rights.

Parker complains that the Missouri City Police Department (1) does not have an intervention policy that would allow responding officers to intervene when a fellow officer exceeds the limits of any use of force against citizens; (2) does not have an adequate training policy for officers for the use of the S-200 AT relating to the vague use of force regarding this device and its potential medical effect on the targeted person; and (3) does not have a policy requiring investigation of use-of-force complaints by citizens.  Its continuing failure to have such policies is evidence of Missouri City's deliberate indifference.

### Applicable Substantive Law

Title 42 U.S.C. § 1983 does not grant substantive rights,

but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. *Id.*

Municipalities and other bodies of local government are "persons" within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). "A municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. *See also City of Canton v. Harris*, 489 U.S. 378, 392 (1989). The bar on vicarious liability means that the municipality can only be liable where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. 658. A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 690-91.

To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policy maker, (b) an official policy [or custom or widespread practice], and (c) a violation of constitutional rights whose "moving force" is the policy or

custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or policy that is the "moving force" behind the constitutional violation)(*citing Monell*, 436 U.S. at 694), *cert. denied*, 534 U.S. 820 (2001).  The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'"  *Okon v. Harris County Hospital District*, 426 Fed. Appx. 312, 316 (5th Cir. May 23, 2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).  When a policymaker commits the act at issue, that act may establish the policy if the policymaker must be "unconstrained by policies imposed from a higher authority."  *Okon*, 426 Fed. Appx. at 316, *citing Hampton Co. v. Nat'l Sur. LLC v. Tunica County*, 543 F.2d 221, 227 (5th Cir. 2008).[3]  Alternatively, a policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and

---

[3]  In such a case the court must determine which official or government body has final policymaking authority for the local government unit regarding the action in dispute. *Id.*

promulgated policy, is so common and well settled as to
constitute a custom that fairly represents municipal policy.'"
*Id., citing id.*, and *Zarnow v. City of Wichita Falls*, 614 F.3d
161, 169 (5th Cir. 2010)("A pattern of conduct is necessary only
when the municipal actors are *not* policymakers")[, *cert. denied*,
131 S. Ct. 3059 (2011)].  "A pattern requires similarity and
specificity; [p]rior indications cannot simply be for any and
all 'bad' or unwise acts, but rather must point to the specific
violation in question. . . . A pattern also requires
'sufficiently numerous prior incidents,' as opposed to 'isolated
instances.'"  *Peterson v. City of Fort Worth, Texas*, 588 F.3d
838, 851 (5th Cir. 2009).

A plaintiff cannot conclusorily allege a policy or a custom
and its relationship to the underlying constitutional violation;
instead the plaintiff must plead specific facts.  *Spiller v.
City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.
1997), *citing Fraire v. Arlington*, 957 F.2d 1268, 1277 (5th Cir.
1992).

"Allegations of an isolated incident are not sufficient to
show the existence of a custom or policy."  *Fraire v. City of
Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992); *see also Rivera
v. Houston I.S.D.*, 349 F.3d 244, 247 (5th Cir. 2003)("[I]solated
unconstitutional actions by municipal employees will almost
never trigger liability."), *citing Bd. of Cnty. Comm'rs v.*

*Brown*, 520 US. 397, 403 (1997).  "The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon*, 426 Fed. Appx. at 316, *citing Bennett*, 735 F.2d at 862.  "'Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information,'" while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Id., citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).  If policymakers do not have notice that a source of training is deficient in a specific respect, they "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

There is a rare exception to the requirement that a plaintiff show a custom or policy where a plaintiff's injury is a "patently obvious" or "highly predictable" result of inadequate training, as when a municipality "arms its police force with firearms and deploys the armed officers into the

public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force," and the municipality's policy makers consciously chose a training program that was inadequate. *Speck v. Wiginton*, Fed. Appx. ___, 2013 WL 1195829, at *2 (5th Cir. Mar. 17, 2015), *citing Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985), and *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011). This narrow exception requires " the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Valle v. City of Houston*, 613 F. 3d 536, 549 (5th Cir. 2010)("[I]n the one case in which we found a single incident sufficient to support municipal liability, there was an abundance of evidence about the proclivities of the particular officer involved in the use of excessive force.," and *citing Brown v. Bryan County, OK*, 219 F.3d 450, 462 (5th Cir. 2000)("finding deliberate indifference based on the police officer's known 'personal record of recklessness and questionable judgment,' inexperience, exuberance, and involvement in forcible arrest situations.").[4]

---

[4] The panel continued, 613 F.3d at 549,

On the other hand, we have rejected claims of deliberate indifference even where a municipal employer knew of a particular officer's proclivities for violence or recklessness. *See, e.g., [Davis*, 219

"[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability. '[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct' will not suffice." *Connick v. Thompson*, 131 S. Ct. 1350, 1363-64 (2011), *citing Canton,* 498 U.S. at 391. "[T]he lack of any similar violations indicates that a violation could not be the 'highly predictable consequence' of a failure to train." *Id.* at 550, *quoting Thompson v. Connick*, 578 F.3d 293, 299 (5th Cir. 2009), *aff'd in part and rev'd in part*, 578 F.3d 293(2009)(*en banc*), *rev'd*, 131 S. Ct. 1350 (2011), and *Conner*, 209 F.3d at 797 ("holding that if a failure to train was 'so likely to result in the violation of constitutional rights,' the plaintiff 'would be able to identify other instances of harm arising from the failure to train.'").[5]

---

F.3d 382-85 (finding no deliberate indifference even though city was aware that officer fired weapon inappropriately, had a propensity for violence, and had received citizen complaints about the officer); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (1998)(rejecting claim of deliberate indifference even though evidence showed officer was extremely stressed, may have had quick temper, and was aggressive). This court has been wary of finding municipal liability on the basis of a single incident to avoid running afoul of the Supreme Court's consistent rejection of respondeat superior liability.

[5] *See, e.g., Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir.

Ratification can also be a basis for governmental immunity when an authorized policymaker affirms that in performing the challenged conduct, the employee was executing official policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). Whether a governmental decision maker has final policymaking authority is a question of law. *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

"Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice"; it

---

1998)("[W]e have held that proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.  The plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.")(*citing Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989)("[S]even judges of the Court agreed in general that a single shooting incident by a police officer was insufficient as a matter of law to establish the official policy requisite to municipal liability under § 1983."), *cert. granted in part*, 525 U.S. 1098 (1999), *cert. dism'd*, 526 U.S. 1083 (1999).

requires a plaintiff to show that "'in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010)(*quoting City of Canton*, 489 U.S. at 390), *cert. denied*, 131 S. Ct. 2094 (2011). "Usually a plaintiff must show a pattern of similar violations, and in the case of an excessive force claim . . . the prior act must have involved injury to a third party." *Id.*; *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1959).

To state a claim against a municipality under § 1983 that will not be dismissed under Rule 12(b)(6), an individual plaintiff can provide fair notice by "*inter alia* describ[ing] (1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; or (4) the specific topic of the challenged policy or training inadequacy. . . . Those types of details, together with any elaboration possible, help to (1) 'satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests,'and (2) 'permits the court to infer more than the mere possibility of misconduct.'"

*Flanagan v. City of Dallas, Texas*, No. 3:13-CV-4231-M-BK, 2014 WL 4747952, at *3 (N.D. Tex. Sept. 23, 2014), *citing Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843-44 (S.D. Tex. 2011); *Twombly*, 550 U.S. at 555 n.3; and *Iqbal*, 556 U.S. at 679. For example in *Flanagan*, *id.* at *10, the district court found adequately pleaded a claim of excessive force by the Dallas Police Department ("DPD") against the City of Dallas to survive a Rule 12(b)(6) challenge:

> Plaintiffs have . . . pleaded several facts from which one could make a reasonable inference of a persistent, widespread practice by DPD officers or otherwise using excessive force rising to the level of a custom having the force of official City policy.  In particular, Plaintiffs alleged in their amended complaint that (1) the policy of the DPD to shoot first and ask questions later; (2) Councilman Caraway informed the media that there were training issues within the DPD that had resulted in the killing of an unarmed individual; (3) Dallas is at the top of the list of police misconduct statistics in the South along with several other Texas cities; (4) Dallas is ranked number 11 in police misconduct incidents; (5) the total number of officer-involved shootings was 144; (6) 86 grand juries have been convened to investigate police misconduct (although only two indictments have been returned); (7) 60 unarmed African-American men have been killed by DPD officers over the past 13 years; (8) at least 12 other shootings of unarmed individuals by DPD officers took place during the year of Allen's death (Plaintiffs describe the details of three of the shootings, all of which occurred after the incident involving Allen [and pointing out similarities to allegations regarding Allen's shooting in that the individuals involved were not provoking or resisting the police when they were shot]); and (9) there are 94 open DPD internal affairs investigation into officer-involved shootings.

The district court further noted, *id.* at *11,

Plaintiffs allege that, on average, more than four unarmed people have been killed by DPD officers each year for the past dozen years and that there are nearly 100 open internal investigations into such shootings and have been nearly as many grand jury proceedings. While it is a close call, taking all of their allegations to be true, Plaintiffs have pled sufficient facts, at the motion to dismiss stage, from which one could make a reasonable inference of a persistent, widespread practice by DPD officers of using excessive force rising to the level of a custom having the force of official City policy.

*Id.*[6]*, citing Oporto v. City of El Paso,* No. 10-CV-110-KC, 2010 WL 3503457, at *6 (W.D. Tex. 2010), and *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *12 (W.D. Tex. 2006).

Parker claims that Missouri City, Texas is liable for inadequate police training and supervision. "In limited circumstances, a local government's decision not to train

---

[6] In *Flanagan*, 2014 WL 4747952 at *13, the district court found the following allegations *inter alia* sufficient to plead that the City of Dallas failed "to provide proper training in the use of deadly force amounts to deliberate indifference to the rights of a person with whom the police come into contact":

(1) a witness stated that Allen was unarmed and complying with Officer Staller's instructions before Officer Staller shot him repeatedly; (2) at least 12 other shootings of unarmed individuals by DPD officers took place during the year Allen died, and over 60 unarmed African-American men have been killed by DPD officers since 2001; (3) although Officer Staller had been the subject of several complaints, at least two of which involved inappropriate use of force, he was still permitted to carry a firearm; and (4) both Councilman Caraway and Chief Brown acknowledged the need for further DPD training.

certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011), *citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)("[A] 'policy of 'inadequate training'' is 'far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*).   To prevail on a failure to train police officers, the plaintiff must show "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow*, 614 F.3d at 170, *citing World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009).   To impose liability on a municipality based on inadequate training, the plaintiff must "allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287. 293 (5th Cir. 2005).  To prove deliberate indifference in a failure to train case  under § 1983, a plaintiff must show that the failure to train was equivalent to "a deliberate or conscious choice to endanger constitutional rights." *Snyder v. Trepagnier*, 142 F.3d 791, 799

(5th Cir. 1998).[7] For the single-instance exception to the requirement of a custom or pattern of similar violations, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and the failure to train represented the moving force behind the constitutional violation." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

To show that a municipality's failure to train was the "moving force" that caused the constitutional injury requires "a heightened standard of causation": "the plaintiff must establish a 'direct link' between the municipal policy and the constitutional injury," i.e., a connection "more than a mere 'but for' coupling between cause and effect"; "[t]he deficiency in training must be the actual cause of the constitutional violation." *Valle v. City of Houston*, 613 F.3d 536, 546 (5th

---

[7] In *Flanagan*, 2014 WL 4747952 at *12, the district court found that Plaintiffs adequately pleaded deliberate indifference in factual allegations to support their claim that the police chief, as the City's final policymaker, "adopted or maintained the policy of police use of excessive force with deliberate indifference to its known or obvious consequences" and "was at fault for Allen's death": "(1) Officer Staller's lack of information regarding Allen's description and the fact that he was unarmed; (2) Officer Staller's firing of ten bullets at Allen, seven of which struck him, and then attempting to reload his gun; (3) the shooting of 12 other unarmed individuals by DPD members in 2013; (4) the deaths of over 60 unarmed African-American men at the hands of DPD officer since 2001; and (5) the 94 open internal affairs investigations relating to officer involved shootings."

Cir. 2010), *cert. denied*, 131 S. Ct. 2094 (2011), *citing City of Canton*, 489 U.S. at 391-92; *Brown v. Bryan County, OK*, 219 F.3d 450, 461 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001); *Board of County Com'rs of Bryan County, OK v. Brown*, 520 U.S. 397, 404 (1997); and *Thompson v. Connick*, 578 F.3d 293, 300 (5th Cir. 2009).

"A municipality may be liable for the failure of a policymaker to take precautions to prevent harm, provided that the omission is an intentional choice and not merely a negligent oversight.  Negligent training will not support a § 1983 claim against a municipality, nor is it sufficient to show that 'injury or accident could have been avoided if an officer had better or more training.'"  *Boston v. Harris County, Texas*, No. Civ. A. H-11-1566, 2014 WL 1275921, at *90 (S.D. Tex. Mar. 26, 2014), *citing City of Canton*, 489 U.S. at 390.  A "city's 'policy of inaction' in light of notice that its program will cause a constitutional violation 'is the functional equivalent of a decision by the city itself to violate the Constitution.'"  *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011, *citing Canton*, 489 U.S. at 395.

**Missouri City's Second Rule 12(b)(6) Motion to Dismiss**

**Plaintiff's 42 U.S.C. § 1983 Claims (#31)**

Missouri City argues that Plaintiff's latest attempt to plead its deficient or lack of policy causes of action should be

dismissed with prejudice since Parker fails to state a claim for relief under any of them because (1) Parker cannot show a causal link between the policies complained of and the constitutional violation alleged; (2) he does not allege or cite a pattern or practice of constitutional violations committed as a result of the policies or the lack of them; and (3) a municipality cannot be held liable under § 1983 for a single incident involving an officer's decision to use force.

Regarding Parker's arguments about city policies, Missouri City insists that its Use of Force policy is not unconstitutionally vague because it does not specifically defined "verbal action" or "fleeing." Plaintiff cannot demonstrate that Missouri City acted with deliberate indifference and/or the policy's definitions were the moving force behind the constitutional violation. Moreover, Parker attached only two of the policy's nine pages; Missouri City attaches the entire policy, Ex. A, to its response and contends that it is well written, extensive and detailed and meets the constitutional guidelines set forth by the United States Supreme Court and the Fifth Circuit.

Missouri City emphasizes that Parker's latest complaint does not allege a pattern or other instances of constitutional violations caused by the policy's failure to define these terms, nor does he cite to any authority finding that the definition of

these terms is constitutionally required.  As a result, Parker cannot demonstrate that Missouri City had actual or constructive knowledge that these terms were likely to endanger the constitutional rights of its citizens in order to prove deliberate indifference.  Parker's claim that "but for" the policy's failure to define "verbal conduct" or "fleeing" the constitutional violation would not have occurred is clearly insufficient to meet the stringent causation requirements for affirmatively linking the policy as the "moving force" behind the civil rights violation.  *Snyder* v. 142 F.3d at 799; *Fraire*, 957 F.2d at 1280 (direct causal connection "must be more than a mere 'but for' coupling between cause and effect").

Regarding a policy for intervening in or stopping excessive force violations, Missouri City contends that the absence of such a policy was not the moving force behind Parker's alleged constitutional violation and the governing complaint does not assert a pattern or practice of constitutional violations committed because there was no such policy.  Furthermore Parker cannot show that the alleged constitutional violation was caused by the other responding officer's failure to intervene or stop Hwang during the incident.  If Parker's reasoning applied, a municipality would be liable for any violation committed by an officer because other officers failed to intervene, a result that is contrary to decades of case law rejecting imposition of

vicarious liability on municipalities and holding that liability "attaches only when the municipality itself has acted wrongly." *Monell*, 436 U.S. at 658; *Snyder*, 142 F.3d at 799.

Even more significant, Missouri City Police Department's Use of Force Policy does mandate that police officers are responsible for protecting "others against the unlawful use of force by other actors," with "other actors including use of force by a fellow officer if required under the circumstances.[8]

In addition, contends Missouri City,  Plaintiff fails to meet the stringent causation requirements for affirmatively linking the policy as the "moving force" behind the deprivation of Parker's civil rights. *Snyder*, 142 F.3d at 799; *Fraire*, 957 F.2d at 1280.  Here, too, the complaint does not allege a pattern or practice of constitutional violations because of the absence of an intervention policy and Parker fails to cite any authority finding this kind of policy is constitutionally mandated. *Rodriguez*, 871 F.2d at 554-55.

Moreover Parker, pleading only a single incident, fails to

---

[8] Parker disagrees with Missouri City's interpretation of this provision.  The whole provision states, "Police officers are armed and trained in the use of weapons in order to carry out their responsibility to protect themselves and others against the unlawful use of force by other actors." Parker construes it as concerning officers' training regarding the use of weapons in protecting themselves or civilians from the use of force by another civilian, and he argues that at the very least there is an issue whether the provision is an intervention policy.  #32 at p. 12.

allege and cannot show a required pattern of incompetence or misbehavior caused by Missouri City Police Department's failure to adequately train its police officers generally about use of force and probable cause and specifically about use of electronic control devices.  Indeed Parker cannot state a cause of action for failure to train because he has not and cannot allege that Missouri City's training standards fail to meet and/or exceed the Texas Commission on Law Enforcement Standards and Education ("TCLEOSE").  The Fifth Circuit has held that if a law enforcement department satisfies state standards for training law enforcement officers, a plaintiff cannot sustain a failure to train action under § 1983.  *Gonzales v. Westbrook*, 118 F. Supp. 2d 728, 737 (W.D. Tex. 2000), *citing Connor v. Travis Co.*, 209 F.3d 794, 798 (5th Cir. 2000), and *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.)("when officers have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate."), *cert. denied*, 506 U.S. 824 (1992).[9]

Finally Missouri City maintains that Parker's failure-to-investigate claim fails because the Police Department's alleged

---

[9] The Court observes that the Fifth Circuit has opined only that compliance with a state training program like TCLEOSE is a factor counseling against a failure to train finding; it is not a *pre se* grant of immunity.  *See, e.g., Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 171 (5th Cir. 2010), *citing Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000).

failure to investigate Plaintiff's claim against Hwang was not the moving force behind and did not cause the alleged constitutional violation, and the complaint does not demonstrate a custom or policy authorizing police misconduct.   Indeed, logically an incident cannot be caused by something that happens after the incident[10] or by something that does not happen. Moreover, "a city's custom or policy authorizing or encouraging police misconduct 'cannot be inferred from the municipality's isolated decision not to discipline a single officer for a single incident of illegality.'"   *Fraire*, 957 F.2d at 1278, *quoting Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982), *overruled on other grounds, International Woodworkers of Am. v. Champion Int'l Corp.*. 790 F.2d 1174, 1181 (5th Cir. 1986).   The complaint does not allege a pattern of similar incidents, nor does Parker cite any authority showing that a policy for investigating every excessive force case is constitutionally required or even a standard for law enforcement agencies.

### Parker's Response (#32)

Parker's response in large part reiterates his previous allegations without responding to Missouri City's arguments.

---

[10] Parker objects that liability can attach for a municipality's inaction if it is shown that repeated failures evince a custom and/or practice.  #32 at p. 17.  He fails to notice that he has not shown "repeated failures" or any pattern of alleged violations like the one he claims happened to him to impose liability on the City of Missouri.

He does point out that § 1983 creates liability for omissions as well as affirmative acts. "When individuals are placed in custody or under the care of the government, their governmental custodians are sometime charged with affirmative duties, the nonfeasance of which may violate the constitution." *Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 141 (2d Cir. 1981), *cert. denied*, 464 U.S. 864 (1983). To impose liability for nonfeasance of such affirmative duties by a government custodian under § 1983 requires that (1) the omissions were a substantial factor leading to the denial of a constitutionally protected liberty or property interest and (2) the officials in charge of the agency being sued must have displayed a mental state of deliberate indifference. *Id.* He thus argues that the omissions for Officers Leura, Hill and other responding officers in failing to intervene and stop the attacks on him by Hwang deprived him of his constitutional rights. Moreover the failure to implement such policies did not impose on arriving officers a duty to intervene and thus directly caused the deprivation of Parker's constitutional rights; vicarious liability is not at issue.

Regarding the TCLEOSE standards, Parker contends they are not the standard for stating a failure to train claim at this stage. "[W]here the municipality, in the face of an objectively obvious need for more or better training or supervision, fails

28 / 35

to take action, a custom or policy may be inferred." *Fincher v. County of Westchester*, 979 F. Supp. 989, 1007 (S.D.N.Y. 1997). Parker has specifically alleged that the policymakers knew or should have known that their police officers would encounter suspects and accordingly armed officers with electronic stun devices and firearms.  Thus there was an obvious and apparent need for the policymakers to implement a policy to further train officers in the constitutional limitations on the use of force. Moreover given the unbridled discretion allowed to officers in the use force under the vague Use of Force Policy, it was conceivable that officers would often violate a citizen's constitutional rights, as Hwang did Parker's.  Parker has also alleged that the policymakers need to implement an adequate training policy regarding probable cause and proper use of force under the circumstances for officers generally and Hwang in particular.  The failure to implement such policies reflects and reveals the deliberate indifference of the policymakers to Parker's constitutional rights, and that indifference was the direct and proximate cause and force behind the injuries he suffered and the deprivation of his federal rights.  So, too, have his allegations that there was no policy for investigating citizens' complaints of misconduct by the police, that this failure evinces a custom and policy of deliberate indifference to the rights of citizens in general and Parker in particular.

Thus Parker has met the notice pleading requirements of Rule 8(a)(2).

Furthermore regarding the TCLEOSE standards, there is no evidence before this court as to any such training or lack thereof of any officers involved in this suit.  The court's role on a motion to dismiss is "not to weigh the evidence that might be presented at trial, but merely to determine whether the complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  Parker insists his pleadings are sufficient and meet the requirement of giving the defendant fair notice of his claims.

### Missouri City's Reply (#33)

The City has no duty to define each and every term in its policies.  *See Deshotels v. Norsworthy*, 721 F. Supp. 2d 525, 531 (W.D. La. 2010).  The plaintiff in *Deshotels* contended that the police policy regarding use of tasers[11] was vague and/or officers

---

[11] The policy, *id.* at 321, stated,

> The Taser may be used to control a violent or potentially violent suspect when lethal force does not appear to be justified or attempts to subdue the suspect by conventional tactics have been, or will likely be, ineffective in the situation at hand.  The TAser X26 may only be used by authorized and trained personnel in accordance with the use-of-force police and additional guidelines established therein.

The Policies and Procedures Manual forbade use of the taser "In a punitive or coercive manner.  On handcuffed or secured prisoner, absent of overtly combative behavior that cannot be

were improperly trained on the taser policy because the officer tasered the plaintiff in a punitive or coercive manner and in the absence of "overly combative behavior." *Id.* Even though the policy did not define "a violent or potentially violent suspect," the court found the policy was not vague and that the policies and customs of the police department were not the moving force behind the plaintiff's alleged constitutional violation. Missouri City points out that officers are entitled to use discretion in performing discretionary duties. *Lancaster v. Chambers*, 883 S.W. 2d 650, 654 (Tex. 1994). Requiring a policy to define every term would be futile and contrary the officer's right to use his discretion to perform his job duties appropriately. Moreover Plaintiff's objection is merely conclusory; he fails to plead specific facts, as required, to state a claim based on a specific policy or custom.

Parker's challenge that Missouri City failed to have an intervention policy is, in essence, a vicarious liability claim, which is impermissible; a municipality can only be liable where it, itself, causes the constitutional violation through execution of its custom or policy that deprives a plaintiff of his constitutional rights. Missouri City notes that the Fifth

---

reasonably dealt with in any other less intrusive fashion. On any suspect who does not demonstrate an over use of violence or force against the officer or another person . . . ."

Circuit has only approved failure to intervene claims against individual officers, not municipalities that did not take reasonable measures to protect a suspect from another's use of excessive force. *See, e.g., Hale v. Townley*, 19 F.3d 1068, 1075 (5th Cir. 1994). Nor was the absence of such a policy the moving force behind Parker's alleged constitutional violations: training would not make it less foreseeable that an absence of a specific policy on a duty to intervene would lead to a Fourth Amendment violation, and training is hardly necessary for a police officer to know that another officer should not be allowed to use excessive force against a suspect. Moreover employees sometime ignore training.

As for meeting the pleading requirements of Rule 8, Missouri City emphasizes that Parker did not meet the requisite requirement to plead a pattern of similar violations to state a failure to train claim against a municipality. *Davis v, City of N. Richland Hills*, 406 F.3d 375, 383 n. 34 (5th Cir. 2005).

Finally, the Fifth Circuit has never held that a municipality ratified an officer's misconduct because it failed to punish him for actions on a single occasion, nor inferred an official policy from a single isolated failure to punish or investigate officer misconduct. *Fraire*, 957 F.2d at 1278.

### Court's Decision

The Court agrees with Missouri City that Parker's complaint

is based on a single incident of alleged violence and that it fails to allege any other similar occurrences that would constitute a pattern, custom, practice or policy.  Thus he fails to allege facts showing deliberate indifference to Parker's and other citizens' constitutional rights.   Hwang was not a policymaker, so a single incident of alleged unconstitutional conduct by him would not impose liability on Missouri City.

Furthermore Plaintiff fails to satisfy the requirements for the single-incident exception to the custom/practice/policy requirement for imposing liability on a municipality.  Plaintiff offers only speculation and conclusory allegations that Missouri City's training program was inadequate, and does not allege any facts showing that Missouri City was deliberately indifferent to his and other citizens' rights.  As noted, to plead inadequate training for municipal liability under § 1983 a plaintiff must "allege with specificity how a particular training program is defective." *Roberts*, 397 F.3d at 293.  Parker does not identify any defects or inadequacies in Missouri City's training of police officers, no less show they were the moving force behind Parker's claimed injuries.  Moreover Parker does not allege any history showing that Hwang had any proclivities toward violence, aggression, or misconduct of any sort that might have provided notice to Missouri City policymakers that he was highly likely to ignore the need for probable cause to arrest someone and use

excessive force to do so.

The Court also agrees with Missouri City that Parker fails to show that the policy's failure to define "verbal conduct" or "fleeing" as constituting active resistance was the moving force behind the alleged violation of Parker's and other citizens' rights.  Not only does Missouri City not have any recognized duty to define these terms, but common understanding of the meaning of these words would suffice for a reasonable person. If the lack of express definitions were the cause of and moving force behind the alleged violation of Parker's and necessarily other citizens' constitutional rights, there would be many other incidents for Parker to cite or to show that Missouri City had actual or constructive knowledge that the lack of such definitions make constitutional violations highly predictable.

As for the absence of an intervention policy, the Court agrees with Missouri City that not only does the Use of Force policy imply a duty on the part of police to stop an officer from applying excessive force where the circumstances do not warrant it, but common sense and a reasonable policeman's sense of duty would require it;  an express policy is not necessary. Parker has not and cannot show that the absence of such a policy was the moving force behind the alleged violation of Parker's constitutional rights or that the City was deliberately indifferent to a need for such.

34 / 35

Finally a failure to investigate after the fact clearly cannot constitute a moving force behind an alleged constitutional violation.

Accordingly, the Court

ORDERS that Missouri City's second amended motion to dismiss is GRANTED.  A final judgment will issue by separate order.

SIGNED at Houston, Texas, this 17th day of July, 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE